UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

L&N TWINS PLACE LLC

                              Debtor.

------------------------------------------------------X

MARIA BALAJ,

                              Appellant,

     v.

L&N TWINS PLACE LLC, *et al.*,

                              Appellees.

No. 20-CV-1858 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Anne Julia Penachio, Esq.
Penachio Malera, L.L.P.
White Plains, NY
*Counsel for Appellant*

Jeffrey Alan Reich, Esq.
Reich, Reich & Reich, P.C.
White Plains, NY
*Counsel for L&N Twins Place LLC*

Jonathan Brett Nelson, Esq.
Dorf & Nelson LLP
Rye, NY
*Counsel for Puka Capital Funding LLC*

KENNETH M. KARAS, District Judge:

     Maria Balaj ("Maria" or "Appellant") appeals from the January 27, 2020 Order of the

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which

granted the claim of Puka Capital Funding LLC ("Puka") against debtor L&N Twins Place LLC ("L&N" or "Debtor") and denied Appellant's claim.  (A.R. A479–81.)[1]  For the reasons set forth below, the Order of the Bankruptcy Court is vacated, and the matter is remanded for further proceedings consistent with this Opinion.

I.  Background

Maria and David Balaj ("David") were married on May 3, 1997.  (A.R. A791.)  After living with David's parents, Zef Balaj and Lina Balaj ("Zef" and "Lina") for several years, Maria and David purchased real property at 2-4 Virginia Place, Pleasantville, NY (the "Property"), consisting of a three-bedroom home and six one-bedroom apartments, which served both as their marital home and a source of rental income for L&N.  (*Id*. at A792–93; *see also id.* at A458.)

To acquire the Property, Maria and David on February 20, 2002 formed L&N as a New York limited liability company.  (*Id*. at A778; *see also id.* at A458.)  Maria and David were each fifty-percent members of L&N, and David served as its managing member.  (*Id*. at A778, A791, A1000; *see also id.* at A458.)  As managing member, David was authorized to "take any and all actions as [he] . . . deem[ed] necessary or desirable to acquire the Property."  (*Id*. at A998; *see also id*. at A458.)  David believed that the only way to purchase the Property would be for L&N to obtain a loan, but was unsure whether a bank would approve a loan in time to purchase the Property.  (*Id*. at 779; *see also id*. at A458.)  Rather than rely on a loan from a bank, David's father Zef, through his and Lina's company Puka, offered to loan L&N money.  (*Id*.)  Puka loaned L&N $861,000.00 plus interest at the federal prime rate, and the loan was memorialized in a promissory note signed by David (the "Puka Note").  (*Id*. at A805–07; *see also id*. at A459.)

---

[1] Citations to "A.R." refer to the record on appeal, filed as a series of appendices to Appellant's opening brief at Dkt. No. 6.

In April 2002, two months after signing the Puka Note, L&N obtained a $600,000 loan from Hudson Valley Bank (the "HVB Loan"), which was secured by a mortgage against the Property. (*Id*. at A780, A909; *see also id.* at A459.)  L&N used the proceeds of the HVB Loan and additional funds to pay in part the amount due on the Puka Note.  (*Id*. at A781; *see also id.* at A459.)  After this date, no further payments were made on the Puka Note.  (*Id*. at A798; *see also id.* at A459.)  Instead, as L&N's managing member, David prioritized payments on the HVB Loan until it was paid off in January 2010, because it was secured and had a higher interest rate. (*Id*. at A781; *see also id.* at A460.)  While the Bankruptcy Court did not make an explicit factual finding to this effect, and neither does this Court, the Parties appear to agree that David did not disclose the existence of the Puka Note to Maria.  (*See* A.R. A801 (containing Maria's testimony that "there was never a conversation between David and I that [L&N] owed [Puka] any money whatsoever"), A781 (containing David's testimony that he "never directly discussed the Promissory Note with Maria").)[2]

David filed for divorce in October 2009.  (*Id.* at A792; *see also id.* at A460.)  In April 2010, the court in the divorce action issued a restraining order against David, granting Maria "the exclusive use and occupancy of the Property and also task[ing] her with collecting the rents from the tenants and using them to pay the Propert[y']s carrying costs."  (*Id*. at A782; *see also id.* at A460.)  In August 2011, Puka sued in Bronx County Supreme Court, alleging that L&N failed to make payments on the Puka Note.  (*Id*. at A27; *see also id.* at A461.)  In April 2013, Maria sued in Westchester County Supreme Court alleging fraud against David, Zef, and Puka.  (*Id*. at A128; *see also id.* at A462.)  The two cases were consolidated in Bronx County Supreme Court. (*Id*. at A136; *see also id*. at A462.)  On May 23, 2017, L&N filed a voluntary petition for relief

---

[2] The Parties dispute the extent of Maria's knowledge of the Puka Note.  *See infra*.

under Chapter 11 of the Bankruptcy Code.  (*Id.* at A500; *see also id.* at A462.)  The state court litigation was removed to Bankruptcy Court, and Puka and Maria both filed proofs of claim.  (*Id.* at A895 (Puka), A1012 (Maria); *see also id.* at A462.)  After trial, the Bankruptcy Court ruled against Maria on her direct fraud causes of action.  (*Id.* at A476; *see also id.* at A462.)  The Parties submitted post-trial briefing on the validity of the Puka Note, Puka's entitlement to interest, and whether David breached his fiduciary duty to Maria and/or L&N.  (*Id.* A423, A428, and A442; *see also id.* at A462–63.)[3]  On October 15, 2019, the Bankruptcy Court issued its Post-Trial Decision, finding that Puka was entitled to recover under the Puka Note, and expunging Maria's proof of claim against L&N.  (*Id.* at A475.)  The Bankruptcy Court entered judgment on January 27, 2020.  (*Id.* at A476, A479.)

The instant appeal concerns only Maria's claim that David breached his fiduciary duty to her and/or to L&N.  In rejecting this claim, the Bankruptcy Court reached the following conclusions.  First, it was consistent with L&N's operating agreement and the business judgment rule for David to focus on paying off the HVB Loan prior to the Puka Note.  (*Id.* at A472.)  Second, there was no evidence in the record that L&N had the money to make payments on the Puka Note in the period after the HVB Loan was paid off in January 2010, but before Maria was granted exclusive use of the Property in April 2010.  (*Id.* at A472–73.)  Third, the record did not suggest self-dealing by David.  (*Id.* at A473.)

---

[3] The Bankruptcy Court describes an alleged breach of David's fiduciary duty to Debtor, and not to Maria.  (*Id.* at A462–63.)  In fact, Maria also claimed a breach of David's duty to her.  (*See* A.R. A434 ("David completely ignored his fiduciary duty to Maria.").)  Further, it is clear from pre-motion proceedings that Maria was granted leave to argue a potential violation of a fiduciary duty owed to her.  (*See* A.R. A723 ("Maria's claim of breach of fiduciary duty runs to David Balaj and his position as the managing member."); *see also* Dkt. No. 44 (17-8332 Dkt. (Bankr. S.D.N.Y.)) (ordering briefing on "[w]hether there was a breach of fiduciary duty by the managing member of L&N Twins Place").)

This appeal followed.  Maria's Notice of Appeal and Statement of Election, and her

Statement of Issues to Be Presented and Designation of Items to Be Included in the Record on

Appeal were filed with this Court on March 3, 2020.  (Dkt. Nos. 1, 3.)  Maria filed her brief on

April 23, 2020.  (Opening Br. of Appellant ("Maria Br.") (Dkt. No. 6).)  On May 22, 2020, Puka

filed its answering brief in which it took no position with respect to the appeal.  (Appellee Puka's

Br. (Dkt. No. 8).)  On June 2, 2020, L&N filed its answering brief.  (Appellee's Answering Br.

("L&N Br.") (Dkt. No. 10).)  On June 16, 2020, Maria filed her reply brief.  (Reply Br. of

Appellant ("Maria Reply") (Dkt. No. 12).)

## II.  Discussion

### A.  Standard of Review

The Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 158(a)(1).  *See*

*Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700 (S.D.N.Y. 2014).  "This Court 'may affirm,

modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions

for further proceedings.'"  *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL

183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd* 697 F. App'x 708 (2d Cir. 2017).[4]  A district court

reviews a bankruptcy court's conclusions of law de novo, its discretionary decisions for abuse of

discretion, and its findings of fact for clear error.  *See In re Bayshore Wire Prods. Corp.*, 209

F.3d 100, 103 (2d Cir. 2000).  Under the clear error standard, "there is a strong presumption in

favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing

court will not upset a factual finding "unless [it is] left with the definite and firm conviction that

a mistake has been committed."  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d

---

[4] While the quoted language, formerly found in Rule 8013, is no longer contained in the
Federal Bankruptcy Rules of Procedure, "logic still compels the same conclusion with respect to
the appellate powers of the District Court."  *In re Madoff*, 2016 WL 183492, at *8 n.14.

5

1570, 1574 (2d Cir. 1994) (citation, alteration, and quotation marks omitted).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id*. at 1574–75 (citation and quotation marks omitted); *see also UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (same).

    B.  Analysis

    Maria argues that "the Bankruptcy Court committed reversible error when it did not consider whether David violated his [fiduciary] duty . . . by not disclosing the existence of the Puka Note and its terms."  (Maria Br. 22.)[5]  The Court agrees and, thus, remands the case to the Bankruptcy Court.  *Cf. In re Margulies*, 517 B.R. 441, 454, 455 (S.D.N.Y. 2014) (remanding to the Bankruptcy Court for further fact finding).

    Under New York law, the elements of a cause of action to recover damages for breach of fiduciary duty are "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  *In re Perry H. Koplik & Sons, Inc.*, 499 B.R. 276, 289 (S.D.N.Y. 2013) (quoting *Rut v. Young Adult Inst., Inc.*, 901 N.Y.S.2d 715, 717 (App. Div. 2010)).

    "Under New York law, LLC members owe one another, as well as the LLC, various fiduciary duties."  *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16-CV-3787, 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017) (collecting cases).  A fiduciary obligation "has two prongs, generally characterized as the duty of care and the duty of loyalty."  *Norlin Corp. v. Rooney, Pace Inc*., 744 F.2d 255, 264 (2d Cir. 1984).  The fiduciary duty of care arises from the New York Limited Liability Company Law ("NYLLCL"), which requires that "[a] manager

---

[5] Maria made this argument before the Bankruptcy Court as well.  (*See* A.R. A434 ("David completely ignored his fiduciary duty to Maria.  David never informed Maria . . . that he had executed a promissory note to his parents on behalf of L&N Twins.").)

shall perform his or her duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."  N.Y. Ltd. Liab. Co. § 409.[6]  The fiduciary duty of loyalty, as reflected in the "good faith" requirement of § 409, bars "not only blatant self-dealing, but also requir[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Birnbaum v. Birnbaum*, 539 N.E.2d 574, 576 (N.Y. 1989).

New York law relatedly imposes on managers of an LLC the duty "to make full disclosure of all material facts."  *Bookhamer v. I. Karten-Bermaha Textiles Co.*, 859 N.Y.S.2d 172, 173 (App. Div. 2008); *see also Salm v. Feldstein*, 799 N.Y.S.2d 104, 105 (App. Div. 2005) ("As the managing member of the company and as a co-member with the plaintiff, the defendant owed the plaintiff a fiduciary duty to make full disclosure of all material facts."); *Rennaker*, 2017

---

[6] L&N claims that David was not subject to the reasonably prudent person standard, as L&N's operating agreement defines the managing member's duty of care to include only "refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of the law."  (L&N Br. 14–15; *see* A.R. A1003.)  The Court does not decide which standard applies here, but notes that there is ambiguity in New York law regarding whether and under what circumstances an operating agreement may change the requirements of NYLLCL § 409.  *Compare Waxman Real Estate LLC v. Sacks*, 938 N.Y.S.2d 230, 2011 WL 4031522, at *3 (N.Y. Sup. Ct. 2011) ("Defendants have not cited to any First Department authority controverting this principle of law or supporting a conclusion that parties could waive their statutory duties under section 409(a) by contractual agreement.") *with Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1001–02 (N.Y. 2011) (allowing after-the-fact release of a fiduciary from claims where "the fiduciary relationship is no longer one of unquestioning trust"); *see also* N.Y. Ltd. Liab. Co. § 417 ("The operating agreement may set forth a provision eliminating or limiting the personal liability of managers to the limited liability company or its members for damages for any breach of duty in such capacity, provided that no such provision shall eliminate or limit . . . the liability of any manager if . . . his or her acts were not performed in accordance with section four hundred nine of this article . . . .").  The case cited by L&N on this point concerns Delaware law and is inapposite. *See Kagan v. HMC-New York, Inc.*, 939 N.Y.S.2d 384, 385 (App. Div. 2012) (evaluating whether "claims for breach of fiduciary duty should be reinstated under Delaware law").  (*See* L&N Br. 15.)

WL 2240235, at *4 (finding that LLC members owe one another and the LLC "the duty of disclosure"). The Second Circuit has similarly found in the context of fiduciary relationships that "a duty to disclose [may] ar[i]se at common law." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991).[7]

The Bankruptcy Court did not make a finding of fact regarding whether the interest accruing on the Puka Note was a "material fact." For example, Maria's prior knowledge of the loan and its terms could render immaterial David's failure to disclose. *Cf. Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) ("[T]here is no duty to disclose information to one who reasonably should already be aware of it."). While the Bankruptcy Court noted that Maria alleges a lack of awareness, (A.R. A461), it made no factual findings regarding the fact or scope of her awareness of the Puka Note. The Parties dispute this point. Maria claims that she assumed that the balance of the amount provided by Puka to purchase the Property had been forgiven, (A.R. A799, A804; *see also* Maria Br. 7), and that such a gift was consistent with the $100,000 sum from Maria's parents for renovations to the Property, (A.R. A798; *see also* Maria Br. 7). By contrast, L&N claims that Maria was present at conversations where the parties discussed the loan, (A.R. A577–78, A785, A1063–64; *see also* L&N Br. 4); that Maria and

---

[7] Courts in other states have found that the duty to disclose is "not an independent dut[y] but the application in a specific context of the board's fiduciary duties of care, good faith, and loyalty." *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001); *see also Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("The duty of [managers] to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty and good faith."); *cf. Ficus Investments, Inc. v. Private Capital Mgmt., LLC*, 872 N.Y.S.2d 93, 99 (App. Div. 2009) (noting that, while not binding, Delaware courts' holdings "can be instructive"). Thus, "[a] claim for breach of the duty of disclosure may implicate only the duty of care when the misstatement or omission was made as a result of the directors' good faith, but 'erroneous judgment' concerning the proper scope and content of the disclosure." *Orman v. Cullman*, 794 A.2d 5, 41 (Del. Ch. 2002) (quotation marks and emphasis omitted). Likewise, a failure to disclose may implicate the duty of good faith or loyalty where the manager that fails to disclose is not independent or disinterested. *Id.*

David acknowledged their continuing obligation to pay the balance owed plus interest, (A.R. A788; *see also* L&N Br. 6); that Maria was present at conversations regarding the balance due, (A.R. A1079; *see also* L&N Br. 6–7); that David several times discussed the balance due with Maria, (A.R. A677; *see also* L&N Br. 7); and that Lina alluded to Maria's debts when asking how she would afford a three million-dollar home, (A.R. A577; *see also* L&N Br. 7).[8]

In the absence of a factual finding on this issue, the Court cannot conclude as a matter of law that David had no duty to disclose the Puka Note, because New York courts have found analogous non-disclosures of day-to-day contractual or financial matters to be material. *See, e.g.*, *Rennaker*, 2017 WL 2240235, at *5 (finding that the plaintiff sufficiently alleged that the defendants "breached their fiduciary duties by depriving [the plaintiff] of information concerning the ongoing affairs of [related entities] and/or the assigned contracts"); *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 243–44 (S.D.N.Y. 2006) (finding that the plaintiffs sufficiently alleged "a duty to disclose the financial condition of the [entity] arising from the [d]efendants' fiduciary duty"). *But see Leighton v. Poltorak*, No. 17-CV-3120, 2018 WL 2338789, at *7 (S.D.N.Y. May 23, 2018) (finding no duty to disclose a significant settlement

---

[8] The Bankruptcy Court made two credibility findings about Maria, but it is unclear that these findings relate to this factual dispute, and the Bankruptcy Court made no findings that allow this Court to connect the dots. First, the Bankruptcy Court found that Maria's testimony that the Puka Note "did not exist in 2002" was "unreliable and self-serving" and "easily outweighed by the remainder of the evidence of the [Puka] Note's validity." (*Id*. at A464.) Second, the Bankruptcy Court rejected Maria's claim that "Debtor's obligations under the [Puka] Note were forgiven." (*Id*.) It did so because "the credibility of Maria Balaj's position is severely undermined by the cross examination of Maria Balaj by Puka Capital's counsel." (*Id*. at A465.) The cross examination referenced by the Bankruptcy Court compared a letter from Maria purportedly memorializing Puka's forgiveness of the outstanding amount due with other thank you cards written by Maria. (*Id*. at A632–43; *see id*. at A465.) As mentioned, the Bankruptcy Court did not connect either of these credibility determinations to the issue of whether Maria was aware of the Puka Note prior to 2011, nor is there an obvious relationship between these issues.

offer where the operating agreement provided one member the authority to handle the LLC's "day-to-day business"); *Lindner Fund, Inc. v. Waldbaum, Inc.*, 624 N.E.2d 160, 161 (N.Y. 1993) (holding that "a duty to disclose arises in only a limited set of circumstances," and that reaching a settlement agreement in principle is not among these circumstances).[9]

Further, the Court cannot as a matter of law find that the Bankruptcy Court should have presumed David's non-disclosure to be valid under the business judgment rule.[10] "The business judgment rule's presumption shields corporate decision makers and their decisions from judicial second-guessing . . . ."  *In re Innkeepers USA Tr.*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010). However, it does so "only when the following elements are present: (i) a business decision, (ii) disinterestedness, (iii) due care, (iv) good faith, and (v) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Id.*[11]  Of these elements, the

---

[9] Maria argues that L&N's operating agreement obligated David to provide after each fiscal year an annual report of the company, including a profit and loss statement. (Maria Br. 9; *see also* A.R. A876.)  One court has found that contractual obligations may suggest a breach of an LLC manager's duty to disclose.  *See Rennaker*, 2017 WL 2240235, at *5 (finding a breach of fiduciary duty claim adequately pleaded where "[the] [p]laintiff alleges that [the] [d]efendants failed to provide the monthly reconciliations required by [their agreement]" (quotation marks omitted)).  However, since it appears that this argument was not raised in Maria's post-trial brief, (*see* A.R. A428–41), the Court does not consider it for purposes of this appeal, *see In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014) (finding that a failure to raise an argument in the bankruptcy court waived the argument, absent a discretionary decision to the contrary).

[10] Where the business judgment rule applies, "a court will defer to the directors unless 'no person of ordinary sound business judgment would say that the corporation received fair benefit.'"  *Patrick v. Allen*, 355 F. Supp. 2d 704, 710 (S.D.N.Y. 2005) (quoting *Aronoff v. Albanese*, 446 N.Y.S.2d 368, 371 (N.Y. App. Div. 1982).  "In contrast, when circumstances remove a corporate decision from the scope of the rule, 'the burden falls upon the board to demonstrate that its actions were reasonable and/or fair.'"  *Id.* (quoting *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995)).  The business judgment rule can in appropriate circumstances shelter business decisions made by managers of an LLC.  *See Zuckerbrod v. 355 Co., LLC*, 979 N.Y.S.2d 119, 120–21 (N.Y. App. Div. 2014).

[11] While this articulation of the standard refers only to "disinterestedness," a lack of independence also bears on the availability of business judgment rule protection.  *See infra*.

record does not compel a conclusion as a matter of law regarding the presence of both a business decision and disinterestedness.

First, it is not clear from the record that David's non-disclosure of the Puka Note to Maria was a business decision. "[T]o receive the protection of the business judgment rule a director must show an exercise of judgment, not simply the existence of a business decision." *RSL Commc'ns PLC ex rel. Jervis v. Bildirici*, No. 04-CV-5217, 2006 WL 2689869, at *6 (S.D.N.Y. Sept. 14, 2006). "Thus, where the directors' methodologies and procedures are so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or a sham, inquiry into their acts is not shielded by the business judgment rule." *Id.* (alteration and quotation marks omitted) (collecting cases). Indeed, in finding that actions were the product of a business decision, other courts have pointed to the intended purpose of the decision. *See, e.g.*, *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (finding that a "[l]oan was the product of a business decision" because it "was made in answer to the problem [the debtor] was having with raising cash needed to remain in satisfactory standing with [its creditor]" (quotation marks omitted)). Here, L&N has not identified a judgment, or a finding by the Bankruptcy Court regarding such a judgment, and accompanying business purpose related to David's non-disclosure.

Second, it is not clear from the record that David's non-disclosure was independent. The business judgment rule shields board decisions "only if they possess a disinterested independence . . . ." *Auerbach v. Bennett*, 393 N.E.2d 994, 1001 (N.Y. 1979).[12] In the context

---

[12] New York courts have articulated more specific, narrower conditions under which the business judgment rule does not shield a fiduciary. *See, e.g.*, *Owen v. Hamilton*, 843 N.Y.S.2d 298, 303 (App. Div. 2007) ("The business judgment rule . . . does not foreclose judicial inquiry into the decision of a board of directors where the board acted in bad faith, e.g., deliberately singled out an individual for harmful treatment, or the transaction is tainted by fraud." (citations

of shareholder derivative actions, courts have found that personal relationships may cast doubt

upon a board member's independence.  *See, e.g.*, *Davidowitz v. Edelman*, 583 N.Y.S.2d 340,

343–44 (Sup. Ct. 1992) ("[C]ommittee members shared business and personal ties with [the

defendant] and the other board members which preclude a finding of genuine independence."),

*aff'd*, 612 N.Y.S.2d 882 (App. Div. 1994); *see also Harbor Fin. Partners v. Huizenga*, 751 A.2d

879, 889 (Del. Ch. 1999) ("Close familial relationships between directors can create a reasonable

doubt as to impartiality."); *Chaffin v. GNI Grp., Inc.*, No. CIV. A. 16211-NC, 1999 WL 721569,

at *5 (Del. Ch. Sept. 3, 1999) (finding a director "must be . . . deemed interested" due to a

"father-son relationship"); *cf. Birnbaum*, 539 N.E.2d at 576 (fiduciary's creating a "financial

relationship with his wife conflicted with his duty to [his niece and nephew co-owners] and

therefore violated the precept of undiluted trust at the core of his responsibilities as a fiduciary").

Here, the record suggests that David may be very close with and financially tied to his parents.

(*See* A.R. A792 (David wished to take care of his parents); A1155 (David works for his father

Zef); A1158 (David and Maria lived with David's parents for six years after their marriage).).

This relationship does not suggest a lack of disinterest, as these cases regarding personal

relationships and independence "did not concern self-dealing by a corporate fiduciary."  *Pers.

Touch Holding Corp. v. Glaubach*, No. CV 11199-CB, 2019 WL 937180, at *20 (Del. Ch. Feb.

25, 2019) (distinguishing *Chaffin*).[13]  However, David's relationship with Zef and Lina may

_____

omitted)); and *Wolf v. Rand*, 685 N.Y.S.2d 708, 711 (App. Div. 1999) ("[T]he business judgment
rule does not protect corporate officials who engage in fraud or self-dealing or corporate
fiduciaries when they make decisions affected by inherent conflict of interest." (citation
omitted)).  Due to these cases' slight internal inconsistencies and the broader guidance in
*Auerbach*, the Court views these cases as exemplary and non-exhaustive.

[13] Thus, the Court finds no error in the Bankruptcy Court's finding that "there is nothing
in the record to indicate self-dealing[,] . . . that David Balaj was on both sides of the

suggest a lack of independence, as a fiduciary "can be controlled . . . through [a] close personal or familial relationship." *Orman*, 794 A.2d at 25 n.50.  Consistent with the "disinterested independence" standard in *Auerbach*, the business judgment rule does not apply where the fiduciary "lacked the independence to consider objectively whether the transaction was in the best interest of its company." *Id*. at 22.[14]

The Court also cannot find as a matter of law that no damages were caused by David's non-disclosure.  As discussed, the Bankruptcy Court held that there was no record evidence that L&N had the ability to pay off the Puka Note between January and April of 2010.  (A.R. A472–73.)  The Court finds no error in this conclusion.  However, the Bankruptcy Court did not make a factual finding regarding Maria's ability to cause L&N to make payments on the Puka Note, thereby avoiding the harm caused by the accrual of interest.  *See Carella v. Scholet*, 824 N.Y.S.2d 185, 187 (N.Y. App. Div. 2006) (reversing grant of summary judgment where the defendants "may have breached their fiduciary duty by forgoing . . . payments . . . , causing the [entity] to miss mortgage payments").  The record does not preclude the possibility that Maria and David received substantial income and had substantial savings, and that Maria would have insisted that the Puka Note to be repaid had she known about it.  (A.R. A796–97; *see also* Maria Br. 13–14.)  If the Bankruptcy Court finds that Maria could and would have caused L&N to make payments on the Puka Note had she known about it, Maria could establish that she was harmed because interest accrued as a result of David's purported breach of his duty.

─────────────────────

transaction[,] . . . [or] that David Balaj has received a benefit that Maria Balaj did not."  (A.R. A473.)

[14] Because Maria's brief argues only that the Bankruptcy Court committed error in not considering David's failure to disclose, the Court does not review the Bankruptcy Court's application of the business judgment rule in finding that David's non-payment on the Puka Note prior to January 2010 did not violate a duty of care.

III.  Conclusion

For the reasons given herein, the judgment of the Bankruptcy Court is vacated, and this

case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion. The

Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

DATED:        December 3 , 2020
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE